# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| STATE MUTUAL INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>DAN D. THURMAN,<br><br>  Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

**COMES NOW** Plaintiff, State Mutual Insurance Company (hereinafter "State Mutual"), by and through the undersigned counsel, and for its Complaint for Declaratory Judgment against Defendant Dan D. Thurman (hereinafter "Thurman"), respectfully alleges to the Court as follows:

1. Plaintiff State Mutual seeks a declaratory judgment with respect to its rights and obligations, in particular its rights to rescind or deny coverage, under a Cancer Lump Sum and Recurrence Indemnity Benefit Insurance Policy (hereinafter "Policy") issued to Defendant Thurman.

## PARTIES

2. At all times material hereto, Plaintiff State Mutual was a Georgia corporation, a Georgia domestic life and health carrier, with its principal place of business located in Georgia, and an insurance company authorized to transact business in the state of Iowa. For the purposes of diversity jurisdiction, State Mutual is a citizen of Georgia.

3. Upon information and belief, at all times material hereto, Defendant Thurman was a citizen of the state of Iowa, residing in Greene County, Iowa, who obtained the Policy from State Mutual.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue is appropriate under 28 U.S.C. §1391(b)(1) and (b)(2) because Defendant resides in this district and because a part of the events giving rise to this claim occurred in this district.

## STATEMENT OF THE CASE AND FACTUAL BACKGROUND

6. On November 9, 2020, Defendant Thurman cancelled an existing policy of cancer insurance issued by State Mutual that provided coverage for Defendant Thurman and his family members due to financial reasons.

7. On September 2, 2021, Thurman obtained an abdominal ultrasound that showed an abnormality—a mass present on his right kidney. Because the mass was not present on prior ultrasounds, his medical providers recommended that Thurman receive a CT scan to further examine the mass.

8. On September 13, 2021, Thurman obtained a CT scan that confirmed the presence of a solid mass on his right kidney and that the mass represented a possible malignancy.[1] When he

---

[1] The Radiology Report from September 13, 2021 noted that the mass "does not represent an angiomyolipoma or simple cyst. Both benign and malignant etiologies must be considered. Renal cell carcinoma is a possibility."

was notified of the results, medical providers recommended additional testing to determine if the mass was malignant. Thurman was advised that he would be scheduled for an appointment with urology to further evaluate the mass on his right kidney.

9. On September 21, 2021, Thurman applied for and purchased a State Mutual individual cancer policy—with the maximum limits of coverage available for himself, but without coverage for his family. On that same date, Thurman completed and signed an application for the Policy. See Policy (attached hereto as Exhibit A).

10. Part B of the Policy application, titled "Qualifying Information," contained the following two questions:

> 2. In the past 5 years, has any person to be insured been diagnosed as having, received medication for, or received any medical treatment for Leukemia, Hodgkin's Disease, malignant melanoma, sarcoma, or any internal cancer, or had radiation or chemotherapy for any of these conditions?
>
> 3. For any conditions described in . . . 2 above which benefits are being applied for, within the past 24 months, **has any person to be insured had any abnormal diagnostic test results**, **awaiting test results**, or been **advised by a member of the medical profession to have any diagnostic test**, or had a medical condition, symptom or abnormality that would have caused an ordinarily prudent person to seek medical treatment or advice, but has not yet done so?

Application, Part B. Qualifying Information at 2 & 3 (p.2) (emphasis added) (attached with Policy as Exhibit A).

11. Thurman provided a negative response to both questions. See id.

12. Thurman signed the Application, which included the following statement, on September 21, 2021:

> ALL STATEMENTS MADE IN THIS APPLICATION ARE **ACCURATE, FULL, COMPLETE AND TRUE**, TO THE BEST OF MY KNOWLEDGE AND BELIEF. I **UNDERSTAND THAT THESE STATEMENTS FORM THE**

**BASIS UPON WHICH INSURANCE WILL BE MADE EFFECTIVE**. I UNDERSTAND THAT OMISSIONS, MIRREPRESENTATIONS OR MISSTATEMENTS **COUD RESULT IN DENIAL** OF AN OTHERWISE VALID CLAIM AND/OR **RESCISSION**, VOIDING OR REFORMATION OF INSURANCE.

Id., Part E. ACKNOWLEDGEMENTS & AUTHORIZATION (p.4).

13. The Policy was approved as of September 21, 2021 and the policy was issued with effective dates between 9/21/21 and 10/21/21.

14. A copy of the signed Application was attached to the Policy that State Mutual issued and provided to Thurman. See Exhibit A.

15. On September 23, 2021, Thurman had a urology consultation appointment and was advised that the mass may be a malignancy but the urologist did not believe he would be able to obtain a meaningful tissue sample if a biopsy was performed at that time. Therefore, Thurman was advised that it would be necessary to have another CT scan in six months for further evaluation.

16. On June 16, 2022, a biopsy of the mass on Thurman's right kidney was performed. The diagnosis from that biopsy found renal cell carcinoma, clear cell type.

17. On July 1, 2022, Thurman made a claim for benefits under the Policy.

18. Because the cancer diagnosis was within two years of the application signature date, State Mutual followed its standard procedure of seeking medical records from Thurman's primary care provider after receiving the claim form and medical authorization.

19. Upon receiving Thurman's medical records, the diagnostic history set forth in paragraphs 7 - 16 above was disclosed in the medical records for Thurman.

20. The medical records established that shortly before signing the insurance application on September 21, Thurman had: (i) an abnormal diagnostic test (ultrasound) on

- 4 -

September 2, (ii) been referred for further diagnostic testing (CT scan) on September 13, (iii) been informed on September 13 that the CT scan did not rule out a malignant diagnosis, and (iv) for that reason his medical providers were scheduling further diagnostic testing with a urologist. Shortly after signing the application, Thurman had a medical consultation regarding the abnormal diagnostic tests with his urologist on September 23, during the 30-day waiting period.

21. The first page of the Policy contains the following notice:

**IMPORTANT NOTICE: The issuance of this policy and any Riders is based upon Your correct and complete answers to all questions and any other information on Your signed Application. Please review the entire contract, including the copy of Your Application. If any information on the Application is not correct and complete, contact Us at PO Box 1404, Rome, Georgia 30162-1404 within thirty (30) days. Omissions or misstatements in Your Application can cause denial of a claim or rescission of Your policy and any Riders.**

Policy, Important Notice (p.1) (emphasis added).

22. The Policy Schedule, included as p. 3 of the Policy, indicated that the waiting period was "30 DAYS FROM THE POLICY DATE." Id., Policy Schedule (p.3).

23. The Policy also included an Insuring Clause which stated:

**Insuring Clause**: We agree, in consideration of the application for this policy and the payment of all premium when due, to provide the benefits set out in this policy for any Covered Person's loss. **This agreement is subject to all of the provisions of the policy** including, but not limited to, policy definitions, conditions, provisions, limitations and exclusions.

Id., Insuring Clause (p.4) (emphasis added).

24. The Policy definitions specifically state that "the Application is attached and made a part of this policy." Id., Definitions (p.4).

25. The definitions also include a provision that states:

> **Evidence of Insurability:** The **correct and complete answers** to the **questions in the Application** which will be **used by Us to base Our acceptance** of any proposed Covered Person.

Id., Definitions (p.5) (emphasis added).

26. The Policy defines "pre-existing condition" as:

> A Sickness or physical condition, disclosed or not disclosed on the Application, for which **medical advice, care, diagnosis or treatment was recommended by a Physician or received from a Physician within six (6) months before the Policy Date or** for which the Covered Person has **incurred expense** or has taken prescription medication **within six (6) months before the Policy Date**; **or** a **condition that manifests itself** in such a manner that it would **cause an ordinarily prudent person to seek medical advice, diagnosis, care or treatment within six (6) months before the Policy Date**.

Id., Definitions (p.7) (emphasis added).

27. The Policy defines "waiting period" as:

> Thirty days from the Policy Date, as shown on the Policy Schedule page, during which time no benefits are payable.

Id., Definitions (p.8).

28. The Policy describes "eligibility for benefits" as follows:

> **For any benefit to be payable** under the benefits described in this policy, the Covered person must be Diagnosed with Cancer and **meet all of the following conditions**:
>
> 1. The Cancer must be Diagnosed and treated after the Waiting Period; and
>
> 2. The Cancer must be Diagnosed and treated while the Covered Person is insured under this policy; and
>
> 3. The loss is a result of Cancer covered under this policy and is **not excluded from coverage under Exclusions and Limitations or the Pre-Existing Conditions Limitation Provision**.
>
> If a Covered Person's Cancer is **Diagnosed during the Waiting Period** or if **medical advice, care or treatment is received during the Waiting Period that leads to a Diagnosis of Cancer** during or **after the Waiting Period**, You have the

     option to cancel the policy or the Covered Person's coverage and may receive a refund of any applicable premiums paid on this policy and attached Riders, if any.

<u>Id</u>., Eligibility for Benefits (p.8) (emphasis added).

     29.     The Policy contains the following "Exclusions and Limitations" that are pertinent to Thurman's claim.

     Except as specified elsewhere in this policy or in any attached Riders, **<u>We will NOT pay benefits for</u>**:

     1.     Any loss for Cancer that occurs while this policy or the Covered Person's coverage is not in force.

     2.     Any loss for Cancer that occurs during the Waiting Period, including:

     a.     **<u>When medical advice, care, treatment or diagnosis received during the Waiting Period leads to a Diagnosis of Cancer during or after the Waiting Period</u>**; or

     b.     If tissue extracted during the Waiting Period leads to a Diagnosis of Cancer during or after the Waiting Period; or

     c.     Cancer that manifests itself during the Waiting Period. Cancer is manifested when symptoms exist.

<u>Id</u>., Exclusions and Limitations at 1 and 2 (p. 9) (emphasis added).

     30.     The Policy also contains a provision governing State Mutual's right to rescind. That provision states:

     **Our Right to Cancel, Rescind or Reform:** We reserve the right to cancel, rescind or reform a Covered Person's coverage under this policy or Rider **<u>in the event of fraud or misrepresentation</u>** by You, a Covered Person, or Your representative including, but not limited to, **<u>fraud or misrepresentation related to any of the following</u>**:

     1.     **<u>Applying for coverage, including the initial qualification for coverage</u>** or any subsequent requalification;

     2.     Telephone verification of submitted information;

    3.     The **filing or processing of a claim**; or

    4.     Any other similar process or procedure.

In the absence of fraud, all statements made by You or a Covered Person will be deemed representations and not warranties. No such statement will be used to deny a claim or reduce benefits **unless it is stated in the Application for coverage**.

Id., General Provisions (p.14) (emphasis added).

    31.    After having an opportunity to receive, review, and evaluate Thurman's medical records in conjunction with the language of the Application and the Policy, State Mutual issued a letter dated August 29, 2022, advising Thurman that the Policy was being rescinded based on a material misrepresentation in the original application for coverage that was signed on September 21, 2021. See State Mutual Letter (including attachments and tracking information) (attached hereto as Exhibit B).

    32.    The letter specifically stated that the Policy would not have been issued if the correct response had been provided to Question No. 3. See State Mutual Letter.

    33.    Enclosed with the letter was a check from State Mutual refunding all premiums paid on the Policy. See Premium Refund Check (attached as part of Exhibit B).

## COUNT I

**STATE MUTUAL PROPERLY RESCINDED THE CANCER POLICY PURSUANT TO IOWA STATUTORY AND/OR COMMON LAW REQUIREMENTS**

**A.**    **State Mutual Satisfied the Requisites for Rescission Pursuant to Iowa Statutory Law.**

    34.    State Mutual adopts and realleges its allegations contained in paragraphs 1-33 of the Complaint for Declaratory Judgment as though fully set forth herein.

35. Section 515.129A of the Iowa Code permits the cancellation of a personal lines insurance policy that has been in effect for 60 days or longer by providing appropriate notice to the insured.

36. To be effective, the notice of cancellation can be based on the discovery of fraud or a material misrepresentation made by <u>or</u> with the knowledge of the insured when "obtaining, continuing, or presenting a claim under the policy." Id. (emphasis added.)

37. Section 514D.3 of the Iowa Code provides rules governing "the manner, content, and required disclosure for the sale of policies of individual accident and sickness insurance."

38. Section 35.9(1) of Chapter 191 of the Iowa Administrative Code contains rules regarding "authorized methods of delivery for notices of cancellation . . . or termination by an insurer" under sections 515.129A and 514D.3 of the Iowa Code.

39. Section 35.9(3) of Chapter 191 of the Iowa Administrative Code states that for a notice of cancellation or termination by an insurer to be effective, the notice must be provided to the person required to receive notice, either in person or by mail to the person's last known address.

40. State Mutual satisfied these requirements when issuing the notice of rescission to Thurman. See Exhibit B.

41. After receiving the notice of claim, State Mutual promptly commenced its investigation and requested appropriate medical records to evaluate the circumstances.

42. Upon reviewing the pertinent medical records in conjunction with the Thurman's representations in the Application for the Policy, State Mutual determined that the medical record history was not consistent with Thurman's representations in the Application and promptly made a determination to rescind the Policy.

43. In a letter dated August 29, 2022, State Mutual advised Thurman that it was rescinding the Policy based on material misrepresentations in the original application that was signed on September 21, 2021. Included with that letter providing the notice of rescission, State Mutual included a copy of the application and a check for the full premium paid by Thurman. See Exhibit B.

44. On September 1, 2022, the letter was mailed to Thurman with tracking. See Exhibit B.

45. An attempt to deliver the letter was made on September 7, 2022, but no authorized recipient was available. See Exhibit B.

46. A notice was left for Thurman and the letter was picked up at the post office in Churdan, Iowa, on September 8, 2022. See Exhibit B.

47. The foregoing steps undertaken by State Mutual satisfy the requirements for rescission under Iowa statutory law.

**B.     State Mutual Satisfied the Requirements for Rescission Under Iowa Common Law.**

48. State Mutual adopts and realleges its allegations contained in paragraphs 1-47 of the Complaint for Declaratory Judgment as though fully set forth herein.

49. Pursuant to Iowa law, a party that is induced to enter into a contract based on the other contracting party's false representations may rescind the contract, cancelling the contract from its inception.

50. When relying on rescission to avoid a contract, the party seeking rescission must demonstrate five elements:

    1. Representation;

2. Falsity;

3. Materiality;

4. Intent to induce the other party to act or refrain from acting[2]; and

5. Justifiable reliance.

51. Thurman's responses in the application for the Policy are considered representations under Iowa law.

52. During its investigation, State Mutual discovered that Thurman made false representations in his application respecting his current condition and two previous abnormal test results.

53. Thurman's representations were material to the transaction. In particular, State Mutual would not have issued the Policy if it had received accurate information in response to the application questions.

54. Responses provided in an application with the intent to obtain insurance are intended to induce the insurer to issue a policy.

55. An insurer is entitled to rely on an applicant's responses in an application seeking coverage.

56. Upon investigating Thurman's responses and considering pertinent medical records from that time period, State Mutual recognized that it had the right to rescind the Policy based on misrepresentations in Thurman's application.

---

[2] In applying the doctrine of equitable rescission to avoid an insurance contract, the Supreme Court of Iowa has defined the "intent to induce" element in this way: "the intent required is only that [the insured] intended to *induce* [the insurer] into acting favorably on his application. […] it is not the knowledge of falsity that is at issue, but 'whether misrepresentations induced the complaining party to act.'" Rubes v. Mega Life and Health Ins. Co., Inc. 642 N.W. 2d 264 (2002); *see also* Hyler v. Garner 548 NW. 2d 864 (1996) ("even innocent misrepresentations may be sufficient to support an action for recission.").

57. After recognizing its right to rescission, State Mutual acted promptly in sending a notice of rescission, explaining the reason for rescission, and returning all premiums paid by Thurman. See Exhibit B.

58. Based on the circumstances, State Mutual was entitled to rescind the Policy and effectuated that right by promptly notifying Thurman of the grounds for rescission and returning all policy proceeds received.

59. An actual controversy exists between State Mutual and Thurman regarding State Mutual's right to rescind the Policy, and by the terms and provisions of Federal Rule of Civil Procedure 57 and 28 U.S.C. §§2201 and 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

**WHEREFORE**, Plaintiff State Mutual files this Complaint for Declaratory Judgment and respectfully requests that the Court enter an Order finding that Thurman made misrepresentations in his application for insurance that provided State Mutual with the right to rescind the Policy, that State Mutual timely rescinded the Policy and returned all premiums, that the Policy is rescinded pursuant to Iowa law, and for such further relief as the Court deems just and appropriate under the circumstances.

**COUNT II**

**STATE MUTUAL HAS GROUNDS TO DENY COVERAGE UNDER THE CANCER POLICY IF THE RESCISSION IS NOT EFFECTIVE.**

60. State Mutual adopts and realleges its allegations contained in paragraphs 1-59 of the Complaint for Declaratory Judgment as though fully set forth herein.

61. State Mutual alleges that it had legally proper grounds to rescind the Policy and properly rescinded the Policy under Iowa statutory and common law. If, however, the rescission

is found to be improper, State Mutual had grounds to deny Thurman's claim under the terms of the Policy.

62. The State Mutual Policy was subject to a 30-day waiting period that commenced on the date the Policy was issued.

63. Based on the date of issuance, the waiting period under the Policy would have been from September 21, 2021 through October 21, 2021.

64. On September 23, 2021, Thurman had a urology consultation where he was informed that he had a lesion on his right kidney that may represent a malignancy but because the urologist did not believe a sufficient tissue sample could be obtained for a biopsy at that point, a new CT scan would be conducted in six months.

65. After the subsequent CT scan, Thurman was diagnosed with cancer on June 16, 2022.

66. Under the Eligibility for Benefits provision of the Policy, there is no entitlement to benefits and the Policy may be cancelled with a refund of premiums "if medical advice, care, or treatment is received during the Waiting Period that leads to a Diagnosis of Cancer during or after the Waiting Period." See Policy, Eligibility for Benefits (p.8).

67. The Eligibility for Benefits provision provides a basis to deny coverage based on the circumstances of the medical care and treatment received by Thurman.

68. An actual controversy exists between State Mutual and Thurman regarding the applicability of coverage under the Policy, and by the terms and provisions of Federal Rule of Civil Procedure 57 and 28 U.S.C. §§2201 and 2202, this Court is vested with the power to declare

the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

**WHEREFORE**, Plaintiff State Mutual files its above and foregoing Complaint for Declaratory Judgment and respectfully requests that the Court enter an order finding that State Mutual had grounds to rescind the Policy and properly rescinded that Policy; and if the rescission is found to be ineffective, that State Mutual had grounds to deny coverage under the terms and provisions of the Policy, and for such further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

WHITFIELD & EDDY, P.L.C.
699 Walnut St., Suite 2000
Des Moines, IA  50309
Telephone:  (515) 288-6041
Fax:  (515) 246-1474
Email: Kirschman@whitfieldlaw.com


By  */s/ Richard J. Kirschman*
       Richard J. Kirschman

ATTORNEYS FOR PLAINTIFF,
STATE MUTUAL INSURANCE COMPANY